No. 34,313

HERSEY C. WALKER, *Appellee,* v. FINNEY COUNTY WATER USERS ASSOCIATION, *Appellant.*

(92 P. 2d 11)

Opinion filed July 8, 1939.

*H. O. Trinkle* and *Roland H. Tate,* both of Garden City, for the appellant. *Logan N. Green,* of Garden City, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is a workmen's compensation case. The commission and the district court found in favor of the claimant. Re-

spondent has appealed from the judgment of the district court on two grounds. The first ground is that respondent's business constitutes an agricultural pursuit or an employment incident thereto, and is therefore exempt from the operation of the compensation act under the provisions of G. S. 1935, 44-505. The second ground is that respondent had not continuously employed five or more men for more than one month at the time of the accident as required by G. S. 1935, 44-507. Claimant contends respondent was engaged in engineering work as that term is defined in G. S. 1935, 44-508 (g).

Claimant lost his left hand in the operation of a cement mixer while working for respondent and while the latter was constructing a cement cap on its diversion dam, the dam being an essential part of its irrigation system. Respondent is a $250,000 Kansas corporation. Its shareholders are farmers who are furnished water by respondent for irrigating purposes. A maintenance charge is assessed against the lands of the shareholders. The purposes of the corporation, as disclosed by its charter, are:

"To acquire, provide for, and to distribute to the lands of the shareholders, as herein provided, an adequate supply of water for the irrigation thereof; to divert, store, develop, pump, carry and distribute water for irrigation of the land to which the shares of stock are now or may become appurtenant, deriving the same from all available sources of supply; to construct, purchase, lease, condemn or acquire in any manner whatsoever, and to own, use, sell, tansfer, convey, maintain and operate any irrigation works, structures, telephone systems, electric or other power plants and transmission lines, and property, both real and personal of every kind whatsoever, necessary to or appropriate for the accomplishment of any of the purposes of this organization; . . ."

In speaking of respondent's method of operation in supplying the shareholders with water, the trial court, in a memorandum opinion, said:

"It takes water from the Arkansas river by means of a diversion dam in Kearny county and by means of one or more main irrigation canals and laterals distributes water for irrigation purposes to an area comprising 10,000 acres of land in Finney county. Its works are necessarily extensive and involve 'building work' and 'engineering work' as these terms are defined in the workmen's compensation act (G. S. 1935, 44-508). Its function is to acquire water and through its system of canals and laterals to convey it to the lands of its stockholders where it is used for irrigation. It serves agriculture, but in the opinion of the court it is not agriculture. It is not an incident to agriculture; no more than the business of the manufacturer of farm implements would be an incident to agriculture. In fact, the business of the respondent is not an 'incident' to anything. It is an institution in itself. No part of its business is to cultivate lands or to grow crops, or to raise livestock. The finding and

opinion of the court is that the respondent is not exempt from the operation of the workmen's compensation act on the ground that it is an agricultural pursuit or an incident thereto."

In 1 Honnold on Workmen's Compensation, 194, the applicable principle is stated thus:

"The purpose for which the work was being done determines its character. Plowing is commonly farm labor, as is also the clearing of brush and shrubs to prepare land for cultivation. But if done to make the land ready for railroad construction, or for the construction of expensive reservoirs, dams, or canals for irrigation purposes, the workmen so engaged are not engaged in farm labor."

In *Mann v. Locke and Lockeford Protection District*, 2 Cal. I. A. C. 433, it was held:

"Where an employee of a farmer was clearing a certain levee in a farmer's protection district, under the superintendence of the protection district foreman, for the purpose of preparing the ground to be raised two feet by scrapers, thus enabling the farm owners to safeguard their lands against overflow, and a willow branch struck the employee in the left eye, permanently blinding it, *held,* that the employee was not engaged in farm labor within the meaning of the compensation act." (Syl. ¶ 1.)

In *Matney v. Azusa Irrigating Co., etc.,* 2 Cal. I. A. C. 893, it was held:

"The impounding and distributing to farmers of water for irrigating purposes is not farm, dairy, agricultural, viticultural or horticultural labor, and an employee of a corporation engaged in such an occupation is subject to the compensation act. Following case of *Mann. v. Lockeford Irrigation District.*" (Syl. ¶ 1.)

In *Feehan v. Tevis,* 2 Cal. I. A. C. 452, it was held:

"Where an employee whose regular trade was that of a carpenter was employed on a farm to do carpentry and other work and met with an accident while actually doing carpenter work, at carpenter's wages, in the construction of a dam for an artificial lake, *held,* that such work was not farm labor and that the employer is liable for the disability resulting from such accidental injury." (Syl. ¶ 1.)

Respondent urges it is not organized for profit. In the case of *State, ex rel., v. Sessions,* 95 Kan. 272, 147 Pac. 789, the question arose as to whether certain incorporated coöperative societies were subject to the payment of annual corporation fees. It was there held:

"An incorporated coöperative society organized for the purpose of providing wires for connection with a telephone exchange, or of maintaining a system of irrigation, for the benefit of its members, is a corporation 'operated for pecuniary profit,' 'doing business for pay,' within the meaning of those phrases as used *in the act referred to.*" (Syl. ¶ 7.) (Italics inserted.)

In the opinion it was said:

"The McPherson Rural Telephone Company and the Kearny County Farmers' Irrigation Association ask the return of the fees respectively paid by them, on the ground that they are within the exemption extended to 'corporations which are not organized or operated for pecuniary profit which are not doing business for pay.' (Laws 1913, ch. 136, § 1.) They exist under the statute providing 'That twenty or more persons in this state may organize and incorporate a coöperative society or company in the manner and form provided by law in other cases, for the purpose and to the end of more successfully promoting and conducting any industrial pursuit.' (Gen. Stat. 1909, § 1904.) They have no capital stock, receive no pay, declare no dividends. The one maintains a line of wires connecting with a telephone exchange, *the other a system of irrigation.* Each is designed for the material advantage of its members, who have chosen to adopt this particular form of incorporation as adapted to their needs. The essential purpose and the ultimate effect are the same as though the corporation required the members to pay for the use of the wire or the water, making the charge just enough to meet the expenses of maintenance. The organizations are in a sense operated for pecuniary profit, as distinguished, for instance, from moral profit. They in a sense do business for pay, as distinguished from doing it from benevolence. We think, in the absence of a more explicit exemption, they should be required to make payment for the privilege of corporate existence." (p. 279.) (Italics inserted.)

We think the trial court correctly held respondent could not escape liability for compensation to its injured workmen on the theory its trade or business constituted an agricultural pursuit or an employment incident thereto within the meaning of G. S. 1935, 44-505. In order to uphold the judgment it is unnecessary to treat the question of whether respondent's trade or business was "building work." Respondent's trade or business, according to the purposes of its charter and the actual work being performed, was clearly engineering work which G. S. 1935, 44-508 (g) defines as follows: " 'Engineering work' means any work in the construction, alteration, extension, repair or demolition of a . . . dike, dam, reservoir, . . . "

Concerning the number of workmen continuously employed for a month prior to the accident, the evidence was conflicting. This court, of course, reviews the record only for the purpose of ascertaining whether there is competent evidence which supports or tends to support the findings and it is not concerned with evidence which tends to contradict or actually contradicts the findings made. (*Smith v. Cudahy Packing Co.,* 145 Kan. 36, 64 P. 2d 582; *Gallagher v. Menges & Mange Const. Co.,* 146 Kan. 506, 72 P. 2d 79.) Moreover, respondent's own evidence left considerable room for reasonable inferences that the necessary number of men were employed for

more than a month prior to the date of the accident. On the subject of inferences this court in *Shay v. Hill,* 133 Kan. 157, 299 Pac. 263, said:

" . . . The function of this court is limited to determining if there was evidence, whether opposed or not, warranting a reasonable inference, although a contrary inference might reasonably be drawn, to sustain the judgment of the district court." (Syl. ¶ 1.)

In *Peoples v. Condie-Bray Glass & Paint Co.,* 121 Kan. 657, 249 Pac. 603, it was said:

"Under all the circumstances the inference may reasonably be drawn that the defendant had the requisite number of men on the job for more than a month at the time of the accident, to bring it within the provisions of the compensation act." (p. 658.)

The trial court was the finder of the facts, and in view of the record, we cannot say the trial court erred in finding the requisite number of men were employed for the necessary period of time.

The judgment is affirmed.