No. 35,286

R. D. PROFFITT, NETTIE PROFFITT and R. D. PROFFITT, as Next Friend of LORRAINE PROFFITT, a Minor, *Appellants,* v. R. G. ALDRIDGE, and LIBERTY MUTUAL INSURANCE COMPANY, *Appellees.*

(119 P. 2d 523)

Opinion filed December 6, 1941.

*G. Clay Baker, Allen Meyers, Hubert Else,* all of Topeka, *Blake A. Williamson, James K. Cubbison* and *Lee Vaughan, Jr.,* all of Kansas City, for the appellants.

*Irwin Snattinger,* of Topeka, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was a workmen's compensation case. The claimants are the parents and a minor sister of the deceased workman. Respondents are R. G. Aldridge, the workman's former employer and his insurance carrier. Claimants, except the minor sister of the workman, prevailed, but all the claimants nevertheless have appealed.

The commissioner made an award to the parents and to the minor sister upon a finding they were partially dependent upon the deceased workman at the time of his accidental death. The trial court affirmed the finding of partial dependency of the parents but arrived at a slightly different amount in calculating the award. The judgment of the trial court also differs from the award of the commissioner in that the court held the sister of the workman was not a dependent within the meaning of the workmen's compensation law.

Appellants first contend the evidence discloses the parents were wholly dependent and that the award should have been computed upon that basis. They admit if the parents are wholly dependent upon the deceased workman, then the minor sister of the workman, is not entitled to compensation, but they contend if the parents are only partially dependent then the workman's sister is entitled to a distributive portion of the award.

Appellees contend this court has no jurisdiction in compensation cases except on questions of law; that only questions of fact are presented now, and the appeal should therefore be dismissed. It is true our jurisdiction in workmen's compensation cases is limited to questions of law, but such questions are presented in the instant appeal as will presently appear.

We shall first examine the record in order to determine whether there was evidence to support the finding that the parents were partially dependent upon the earnings of the workman.

The family home for a number of years prior to July 17, 1940, the date of the workman's death, and on the date of his death, was Kansas City, Kan. The deceased workman had been employed by the respondent Aldridge at Topeka only 17 days before his accidental death. The family consisted of R. D. Proffitt, the father, Nettie Proffitt, the mother, Lorraine Proffitt, the minor daughter, who was 12 years of age, Harriet Proffitt, a daughter who was 18 years of age, and the deceased workman, who was 19 years of age at the time of his death. For a period of six or seven months prior to the workman's death the daughter Harriet had been employed by a firm in Kansas City, at a salary of $60 per month, and was paid $30 every two weeks, less $1.40 taken out of her salary for social security dues. She lived at home and contributed $2 or $3 every two weeks. The reasonable value of board and room in the vicinity where the family lived in Kansas City was between $4 and $5 per week at the time of the workman's death. The deceased son came home from Topeka two or three evenings a week.

The father sold paint on a commission basis. He had an open territory, including Topeka, Leavenworth, Kansas City, Kan., Kansas City, Mo., Excelsior Springs, Mo., and St. Joseph, Mo. He traveled in his own car. During the years 1938 and 1939 the father realized a profit, or net earnings, in the sum of $267 and $110, respectively. For the first half of the year 1940 his expenses and income were approximately the same. His expenses were figured on the basis of $35 per month.

The mother testified that during a period of approximately six months prior to the son's death Mr. Proffitt did not help with the expenses of the house, as he did not earn more than his expenses; that on the date of the son's death they were entirely dependent upon support from their son. The father testified substantially to the same effect. His testimony with respect to his expenses was:

"I would estimate that I expended in procuring this business, that is, traveling expenses and expenses incidental to the sale of these paints, would average $1.25 a day. This would include bus fare, street-car fare and incidentals such as buying a customer a coke or a cigar, which one naturally has to do to get any place. This I estimate would run $35 a month."

The record discloses the deceased had worked 87 weeks during the two-year period prior to his death and had earned the total sum of

$1,213.50. During that two-year period he had contributed about two-thirds of his earnings to the family, or an average of $404.50 per year. During the two years, except for the 17 days immediately prior to his death, he lived in the family home. The reasonable value of his board and room while at home was $4.50 per week. The value of his own board and room during the 87-week period covering two years was $391.50. The annual value of his own board and room while at home was, therefore, $195.75. The commissioner and the trial court deducted the annual value of his board and room from the workman's annual contribution in the sum of $404.50, which left a balance in the sum of $208.75.

The commissioner and the trial court proceeded to compute the award upon the basis of G. S. 1935, 44-510 (2), which relates to the amount of compensation where death results from the injury. Insofar as here pertinent the provisions read:

"(a) If a workman leaves any dependents wholly dependent upon his earnings, a sum equal to three times his average yearly earnings, computed as provided in section eleven of this act [R. S. 1931 Supp. 44-511], but not exceeding four thousand dollars ($4,000) and not less than fourteen hundred dollars ($1,400): . . . (b) If a workman does not leave any such dependents, but leaves dependents in part dependent on his earnings, such percentage of the sum provided in paragraph 2 (a) of this section as the average annual contributions which the deceased made to the support of such dependents during the two years preceding the injury bears to his average annual earnings during such two years. . . ."

In the computation the commissioner employed the short method recommended by this court in *Burgin v. Western Coal & M. Co.*, 135 Kan. 330, 10 P. 2d 908. It was there held:

"A short formula for computing an award under section 10 of the workmen's compensation act to one who was partially dependent on a deceased workman whose earnings were such that three times his earnings computed under section 11 of the act, were as much as $1,400 and not more than $4,000, is to multiply by three the workman's average annual contributions to the dependent for the two years prior to his death." (Syl.)

The commissioner, therefore, multiplied the annual contribution of the workman in the sum of $208.75, which was made to the rest of the family, by three, and obtained a total award in the sum of $626.25. The trial court employed the longer—the ratio—method prescribed in the same statute, G. S. 1935, 44-510 (2), and arrived at a total award in the sum of $637.08. There is no cross-appeal by appellees from the judgment of the trial court.

We shall next consider the contention of appellants that the trial

court erred in holding the workman's minor sister was not entitled to an award within the meaning of the act. G. S. 1935, 44-508 (j) provides:

"'Dependents' means such members of the workman's family as were wholly or in part dependent upon the workman at the time of the accident. 'Members of a family,' for the purpose of this act, means only legal widow or husband, as the case may be, and children; or if no widow, husband, or children, then parents or grandparents; or if no parents or grandparents, then grandchildren; or if no grandchildren, then brothers and sisters."

In the instant case the workman had no immediate family of his own, that is, a wife or children. His parents were living at the time of the accident. In support of appellant's contention they cite *Winchester v. The Stanton-Wallace Construction Co.*, 124 Kan. 458, 260 Pac. 614. The case is distinguishable. In that case the minor child was the workman's own child and hence a member of his own immediate family. That fact is constantly emphasized in the opinion in the Winchester case, *supra*. In the instant case, however, the minor child was not a member of the workman's immediate family, but a member of his parents' family. The distinction between these two classes of cases was indicated in the latter case of *Tisdale v. Wilson & Co.*, 141 Kan. 885, 891, 893, 43 P. 2d 1064. Furthermore, in the instant case there is no question with respect to any portion of the award lapsing, as there was in the Winchester case. Here the compensation, whether computed upon the basis of partial or complete dependency, will all inure to the benefit of the parents. None of the compensation due will lapse. In the Winchester case forty percent of the award which was actually due would have lapsed under the finding of the jury had the mother been excluded from compensation. The district court did not err in the instant case in excluding the sister of the deceased workman.

As heretofore stated appellants assign as error the finding that the parents were only partially dependent upon the earnings of the deceased workman. On review of compensation cases this court is concerned only with evidence which supports or tends to support the findings made, and not with evidence which supports or tends to support a contrary finding. (*Smith v. Cudahy Packing Co.*, 145 Kan. 36, 64 P. 2d 582; *Gallagher v. Menges & Mange Const. Co.*, 146 Kan. 506, 72 P. 2d 79; *Walker v. Finney County Water Users Ass'n*, 150 Kan. 254, 92 P. 2d 11.)

On the subject of inferences this court, in *Shay v. Hill*, 133 Kan. 157, 299 Pac. 263, said:

". . . The function of this court is limited to determining if there was evidence, whether opposed or not, warranting a reasonable inference, although a contrary inference might reasonably be drawn, to sustain the judgment of the district court." (Syl. ¶ 1.)

See, also, *Walker v. Finney County Water Users Ass'n,* 150 Kan. 254, 258, 92 P. 2d 11.

Appellants are correct in contending the degree of dependency must be determined as of the time of the accident. [G. S. 1935, 44-508 (j), 44-510 (2c).] They contend that on the date of the workman's accidental death the parents, according to their own statements, were wholly dependent upon the son's earnings. It is true the parents did so testify, but that was not their entire testimony. The mother testified at the time of the accident her husband did not help with the expenses of the house. There were, however, other than household expenses to which the father, according to his own testimony, must have contributed. A fair inference from other testimony of the father was that he, a member of the family, was substantially supported by his own income. He testified that during the six months prior to the son's death and while he was traveling away from home, his income substantially equaled his expenses. The trial court had a right to assume the father, while traveling, was obliged to eat. The evidence did not compel a contrary conclusion. Nor was there evidence he returned to his home for lodging every night. The evidence disclosed only his average daily and monthly expenses. The trial court had a right to assume, in the absence of a contrary showing, that such expenses as were incidental to the father's work as a traveler were paid out of the father's income. In fact, that in substance was the father's testimony. There was, therefore, testimony from which the trial court could find the parents were not wholly dependent upon the son's earnings.

In *McCormick et al. v. Coal & Coke Co.,* 117 Kan. 686, 232 Pac. 1071, various kinds of dependencies were defined thus:

"Wholly dependent, means full, complete dependence, that the individual has no consequential source or means of maintenance other than the earnings of the workman. Partial dependence may vary in degree from wholly dependent on the one hand to wholly independent on the other; and may apply to any individual 'member of the family' of the workman, who has some substantial source of maintenance other than the wages of the workman." (p. 690.)

In *Michael v. Jacob Dold Packing Co.,* 120 Kan. 684, 244 Pac. 1050, this court, after quoting the provisions of R. S. 44-510, 2, (a) (b), which was then the same as it is now, said:

"We think within the meaning of the language quoted a person is to be regarded as wholly dependent upon a workman when his support is derived wholly from the workman's wages, and is partly dependent upon him when his support is derived in part from that source and in part from some other. The circumstance that all the workman's wages, together with money they obtain elsewhere, are used for his parents' support does not in our judgment create a condition of total dependency on their part." (p. 686.)

These definitions and interpretations of the statute were later approved in *Baker v. Western Power & Light Co.*, 147 Kan. 571, 78 P. 2d 36. For a somewhat similar case in which a judgment for total dependency was reversed, see *Burgin v. Western Coal & M. Co.*, 132 Kan. 663, 297 Pac. 373. We do not think we can say as a matter of law there was no evidence to support the finding that the parents in the instant case were only partially dependent upon the son's earnings.

We must now consider the proper method of computing the award upon the basis of the parents' partial dependency under the provisions of G. S. 1935, 44-510 (2), previously quoted, which statute also requires consideration of those provisions of section 11 of the act which were in force at the time of the accidental death of the workman. The first thing which we are required to do, however, in order to obtain a proper basis for computing the award pursuant to those provisions is to settle the contention of appellants that the trial court erred in deducting the annual value of the workman's board and room while living with the family in the sum of $195.75 from the workman's average annual contribution to the family in the sum of $404.50. It has been held the value of the workman's board and room, where he lives with the family, may be deducted from his contributions to the family for the purpose of determining whether dependency upon his earnings exists, but that after establishing the fact that dependency does exist, by a showing that his contributions to the family exceed the value of his board and room, then the value of his board and room may not be deducted when applying the formula provided in the statute. (*Spurgin v. Spurgin*, 152 Kan. 212, 216, 103 P. 2d 889.) In the instant case the annual contributions of the workman exceeded the annual value of his board and room. The workman, therefore, should have been credited with annual contributions to the family in the sum of $404.50. Following the short method of calculation recommended in the Burgin case, *supra*, the award would be three times $404.50, or $1,213.50.

Appellants question the correctness of the rule laid down in the

Burgin case and contend, in any event, it should not be applied in the instant case. Their objection to that rule does not appear to be based upon the shorter method of computation there recommended, namely, that of multiplying by three, but rather that the amount which was multiplied by three in the instant case did not correctly represent the average yearly earnings of the workman. It was stipulated in the instant case the workman's wages at the time of his death were fifty cents an hour, and $21 per week. They contend the average yearly earnings should have been computed by multiplying $21 by 52, which would have amounted to $1,092. They contend that amount should then have been multiplied by three, pursuant to G. S. 1935, 44-510 (2a), which would have made a total sum of $3,276. Having determined that basic amount, they contend, the award for partial dependency should then have been computed on the percentage basis prescribed in G. S. 1935, 44-510 (2b). The formula they suggest for computation would have been:

$$\text{``}\frac{404.50 \text{ (annual contribution)}}{606.25 \text{ (actual annual earning)}} \quad \text{X} \quad \frac{\$3,276 \text{ (52 x \$21 x 3)}}{1} \text{ ''}$$

The award upon that basis of computation would have been $2,184.

In the first place it will be observed appellants' computation is not based upon average yearly earnings, but only upon the wage the workman was receiving from one single employer, the respondent Aldridge, at the time of his death. That wage rate was higher than any he had received under any previous employment during the two years preceding his death while working for other employers. Next, it must be noted that section 11 of the act (G. S. 1935, 44-511), which was in effect on the date of the workman's death, July 17, 1940, contained no provision for computing average yearly earnings. It was omitted in the 1933 revision when section 11 was amended and the original section 11 of the act was repealed by chapter 74, Laws of 1933, Special Session (G. S. 1935, 44-511). In chapter 263, Laws of 1941, a provision for computing the average yearly wage was again included (amending G. S. 1935, 44-511).

Appellants recognize the legislative history as above stated but contend that by reason of the provision which existed in the law prior to the 1933 revision, and that in view of the provision which now exists in the 1941 revision, the average yearly earnings should be computed on the basis they have indicated. There are a number

of reasons which prevent a computation of average yearly earnings on the basis appellants suggest. One reason, and a sufficient one, is that no statutory provision for computing the average yearly earnings existed at the time of the accidental death and courts cannot arbitrarily enact or create one.

Appellants contend our decision in *Baker v. Western Power & Light Co.,* 147 Kan. 571, 78 P. 2d 36, decided April 9, 1938, while the 1933 revision was in effect, and which involved an accident which occurred on August 27, 1935, sustains their position. The decision is not authority for appellants' contention that the average yearly earnings should be determined solely upon the basis of the single wage the workman was receiving at the time of his death. In the Baker case, *supra,* it was held:

"Under G. S. 1935, 44-511, the customary number of working hours per day or week that constitute an ordinary day or week in the character of the work involved is the basis of the computation for compensation of dependents, rather than the actual hours of labor performed by the injured or deceased workman." (Syl. ¶ 1.)

It will be observed the question involved in the Baker case, insofar as section 11 was concerned, pertained to the proper number of hours per day or week which should be used in the computation of the award. That subject was covered by the 1933 revision which was then in force and effect. The average annual earnings, however, were determined by dividing the total earnings for the two years prior to the workman's death by two.

In the instant case the court, in order to ascertain the average yearly earnings, divided by two the actual total earnings of the workman during the two-year period prior to his death, which was $606.25. In the absence of some other statutory direction for computing the average yearly earnings, we cannot say the method adopted constituted reversible error. As previously stated, the wage which the workman was earning at the time of his death was the highest wage rate he had received at any time during the two-year period. In the instant case, if that weekly wage alone were used as the basis for computing the average yearly earnings, as appellants contend it should be used, the award would of course be larger. In another case, however, the wage at the time of the accidental death might be the lowest wage the workman had received during the two preceding years. In that event, if such weekly wage were multiplied by 52, the award might be smaller than if the average weekly earn-

ings were determined upon the basis of the total earnings for the two preceding years. Manifestly, courts should not compute the average yearly earnings solely upon the basis of the weekly wage at the time of the accident, in the absence of an express legislative direction to do so.

Upon the basis of the average yearly earnings, adopted by the trial court, the formula for computing the award under G. S. 1935, 44-510 (2*a*) and (2*b*), would be:

$$\frac{\$404.50 \text{ (annual contribution)}}{\$606.25 \text{ (actual annual earnings)}} \times \frac{\$1,818.75 \ (\$606.25 \times 3)}{1} = \$1,213.50 \ (\text{Award}),$$

which award is the same, in the instant case, as three times $404.50 (annual contributions).

Except as herein modified with respect to the deduction which the trial court made for the value of the workman's board and room, the judgment is affirmed. The award based upon the partial dependency of the parents is, therefore, $1,213.50, for which amount the trial court is directed to enter judgment in favor of the parents of the deceased workman, namely, to R. D. Proffitt and Nettie Proffitt, his wife.