No. 42,178

MARGARET LOVE, Widow, and BOBBY LOVE, JR., Minor Dependent, Bobby Love, Deceased, *Appellants*, v. W. H. Kerwin, Deceased, and/or TWILA M. KERWIN, Administrator, AETNA CASUALTY & SURETY CO., *Appellees*.

(359 P. 2d 881)

Opinion filed March 4, 1961.

*Roscoe W. Graves*, of Emporia, argued the cause and was on the briefs for the appellants.

*Robert N. Partridge*, of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes* and *Robert L. Howard*, all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: The appellants brought a workmen's compensation claim against the appellees in which it was alleged that claimants' husband and father was an employee of W. H. Kerwin at the time

of the husband's death; that the husband Bobby Love died in the course of his employment on January 12, 1959, and that his death arose out of the employment by Kerwin.

The evidence introduced before the examiner for the workmen's compensation commissioner was quite meager because not only was the alleged employee dead, but the claimed employer died on March 18, 1959. Still further, it may be noted that the examiner who heard the evidence, the late Floyd D. Strong, esquire, died soon after the hearing. In the award of the workmen's compensation commissioner, the claimant was given an award for $12,480 against the respondents upon findings supporting the award.

On an appeal to the district court by the respondents, that court found that Bobby Love was not an employee of Kerwin, and that his death did not arise out of the employment. The claimants have appealed to this court.

We shall attempt briefly to state the known facts of the case. Bobby Love had been an automotive mechanic in Eureka for some years. Although the evidence is not conclusive, it would appear that during the year 1958 Love was working for himself on the trucks and automobiles of his own customers; that perhaps his best customer was Mr. Kerwin who operated a fleet of four trucks for hauling water. It also appears rather conclusively that at times during the year in question, Love drove one of the Kerwin trucks and was paid for such driving. Love had no garage in which to make his automotive repairs, but would appear to have worked outside or in such shelter as was available in each instance.

The main question in this appeal would seem to be: Was Love an employee of Kerwin at the time of his death?

Before turning to the evidence upon the above question, we must observe again that, under the well known rule of law announced in the workmen's compensation act, this court has no jurisdiction over questions of fact on appeals under the act. (G. S. 1959 Supp., 44-556; *Cross v. Wichita Compressed Steel Co.,* 187 Kan. 344, 356 P. 2d 804; *Grow v. Musgrove Petroleum Corp.,* 184 Kan. 800, 339 P. 2d 75; *Allen v. Goodyear Tire & Rubber Co.,* 184 Kan. 184, 334 P. 2d 370; *Heer v. Hankamer Excavating Co.,* 184 Kan. 186, 334 P. 2d 372.) The claimant at least gives lip service to this rule and would seem to urge that in reality there is no evidence to support the finding of the district court and that this court can reverse that court's finding as a matter of law, see *Roth v. Hudson Oil Co.,* 185 Kan. 576, 345 P. 2d 627.

We find no dispute in the evidence as to the fact that on or about the first week of January, 1959, Kerwin rented a garage and Love began to perform the work of repairing automobiles therein. There was some arrangement between the two men but as to the question of how the work was to be carried out, there is a definite dispute in the testimony.

Merle Mitchell testified that Love had done work on trucks and cars for witness for several years; that all of the arrangements for all of the work had been made by witness and Love; witness knew nothing of the business arrangements between Love and Kerwin. On Thursday before the death of Mr. Love on Monday, witness left a G. M. C. pickup truck at Mr. Love's house for the purpose of having the transmission fixed; Love was not there and witness did not know that the truck would be worked on at the garage. This was the truck upon which Love was working at the time of his death. Witness paid for the work by sending a check to Mrs. Love after her husband's death.

The claimant, widow of Mr. Love, testified that she and her husband had a conversation during the weekend before he died concerning a new arrangement for the work at the garage; that her husband definitely told her he was to receive $2.00 per hour from Kerwin for all work performed.

The fourteen year old son of the couple testified that he heard the conversation on the matter of wages between his mother and father.

Witness Don Smith testified that Kerwin told him two or three days before Love's death that Love was a good mechanic and was now working for him (Kerwin).

The witness from whom the garage was rented testified, among other things, that Love made a remark while around the garage to the effect that he was working for himself.

The representative of the insurance carrier had a statement signed by Kerwin and evidently drawn up after Love's death and before Kerwin's death which stated that Love was to pay to Kerwin one third of the labor charge made upon business brought into the garage by Love.

The statement also contained the account of Mr. Love's death. Kerwin recounted in the statement that Love was working on a truck belonging to Mitchell on January 12; that he had moved his tools into the garage on January 9 or 10; that Love's eyes were

bloodshot and his face flushed; that Love said he had strained himself in installing the transmission in Mitchell's truck. Kerwin stated further that he left the garage and returned to the shop about 3:40 p. m. and found Mr. Love dead, face down on the floor. Kerwin called the ambulance and the driver thereof called Dr. Hollenbeck, who said Mr. Love had died of a heart attack or coronary occlusion.

The statement continued to the effect that Kerwin had always considered Love an independent contractor; that Love did not work for Kerwin; that he was on no salary or guarantee from Kerwin and had full control over his own activity.

Kerwin's widow, who was the bookkeeper for the business of her husband, testified that her books showed no wages due Love except those paid during 1958 for driving one of the trucks; that she understood the arrangement at the garage to be that Love was to receive twenty percent of the profit from all mechanical work. She also testified that Mrs. Love, after her husband's death, never made a claim for any wages due her husband.

There may have been other bits of evidence introduced of a similar inconclusive nature. Most of the evidence of both sides would be subject ordinarily to the charge of being hearsay, but was admitted in this workmen's compensation hearing.

The claimants in this court argue strongly that claimant's evidence was probably hearsay but that no objection was raised thereto at the hearing before the examiner; that claimant objected to the hearsay evidence adduced by the respondents. Claimant would have this court conclude that the evidence of claimant is binding upon the court; that the evidence of the respondents is incompetent because it was like that of the claimant but objections were lodged against it. Claimant would thus have us hold that claimant's hearsay testimony was undisputed and binding upon the court.

However, claimants have failed to point to any of our former decisions where hearsay has been stricken from the record by this court. Many of our cases have held that the common-law rules as to the competency of evidence are not to be strictly applied in workmen's compensation cases. (*Employers' Liability Assurance Corp. v. Matlock,* 151 Kan. 293, 98 P. 2d 456, 127 A. L. R. 461; *Hall v. Armour & Co.,* 153 Kan. 656, 113 P. 2d 145; *Scott v. Kansas Western Pipe Line Co.,* 158 Kan. 160, 146 P. 2d 366; *Dean v. Hodges*

*Bros.,* 170 Kan. 333, 334, 224 P. 2d 1028; *Shobe v. Tobin Construction Co.,* 179 Kan. 43, 292 P. 2d 729.)

It may be noted that the rule as to the exclusion of hearsay evidence is particularly confined to the common-law courts where the jury system prevails. According to our understanding, hearsay evidence seems to be usually admissible in the courts of France and Germany.

At least, the question of competency, of credibility and weight of the evidence are primarily matters for the district court. That court under the workmen's compensation act is the court having jurisdiction over matters of fact.

In *Employers' Liability Assurance Corp. v. Matlock,* supra, it was said to be very important that the examiner receive all the evidence offered so that the district court, on appeal, would have a complete record to pass upon.

In *Scott v. Kansas Western Pipe Line Co.,* supra, testimony in the nature of hearsay was received and relied upon. It may be noted that the majority opinion makes some statements discounting the hearsay nature of the evidence. Be that as it may, the three dissenting justices do not dissent on the point of the admissibility of the evidence. Upon a complete review of this record, we feel that the district court was justified in considering all the evidence adduced before the workmen's compensation examiner.

We are clear that the credibility and weight of the evidence were for the district court. We shall not lengthen this opinion by including the trial court's careful memorandum opinion. It might be observed that the opinion does not show that claimants in the district court ever questioned the competency of any of the evidence in the record of this case.

If the district court had concluded that the commissioner's award should be confirmed, this court would be compelled to affirm such decision. Likewise, the finding that Bobby Love was not an employee of Kerwin at the time of his death, binds this court.

The decision appealed from must be affirmed.

It is so ordered.